STATE of Iowa, Appellee,

v.

Gary Lee DAVIS, Appellant.

No. 60589.

Supreme Court of Iowa.

Aug. 30, 1978.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen. and Robert J. Blink, Asst. County Atty., for appellee.

REYNOLDSON, Chief Justice.

Defendant appeals from judgment entered upon conviction for statutory rape, a violation of § 698.1, The Code, 1975. We affirm.

From persuasive trial evidence, the jury could have found the fourteen-year-old victim and her boyfriend Charles Walker spent the evening of October 22, 1976, in a bowling alley and in a Des Moines park. Later they encountered defendant Gary Lee Davis, age seventeen. The latter and another boy invited them to a home. Once there, defendant beat Walker, then shoved the victim into a bedroom where he forcibly raped her.

A petition was filed charging defendant with being a delinquent, based upon a forcible rape in violation of § 698.1. December 15, 1976, a § 232.72 juvenile court transfer hearing was held. At the outset the State orally moved to amend the petition to substitute statutory rape for forcible rape. The motion was denied.

Defendant was transferred to district court for prosecution as an adult. The State then filed a county attorney's information charging defendant with statutory rape, a violation of § 698.1.

Defendant timely demurred to the information on the ground trial court was without jurisdiction because the offense charged was not the offense before the court in the transfer hearing. Upon submission of the demurrer, defendant orally contended the prosecution should be barred from charging statutory rape "under principles of collateral estoppel, res judicata, and by a prior ruling of the Juvenile Court which they did not appeal." The demurrer was overruled.

The jury returned a guilty verdict. Defendant was sentenced to serve a term not to exceed twenty years in the Men's Reformatory.

Appealing, defendant relies on alleged trial court errors discussed in the divisions which follow.

I. *Should the demurrer have been sustained?*

As we have noted above, the juvenile court judge did not permit the delinquency petition to be amended to allege statutory rape. Yet, after transfer, the county attorney's information alleged defendant violated § 698.1 in that he "did carnally know and abuse * * * a female child under the age of sixteen years." Demurring, defendant asserted he could be prosecuted only on those charges determined by and transferred from juvenile court.

The pertinent portion of the transfer statute, § 232.72 (set out in *State v. Anthony*, 239 N.W.2d 850, 851 (Iowa 1976)), refers to a delinquency petition "based on an alleged act." It authorizes juvenile court to refer "the alleged violation" to the appropriate prosecuting authority "for proper action under the criminal law." See *Stuart v. State ex rel. Jannings*, 253 N.W.2d 910, 914 (Iowa 1977).

Under the 1975 Code "delinquent child" means, *inter alia*, one who has violated any state or local laws or ordinances, except any offense which is exempted by law from chapter 232. See § 232.2(12)(a). When, as here, a minor is alleged to be delinquent under this provision the petition should either identify the law or ordinance violated or adequately detail the criminal conduct involved. Cf., *In Interest of Johnson*, 257 N.W.2d 47, 49 (Iowa 1977) ("[T]he juvenile is entitled to adequate written notice of the charges against him.").

But as long as the act or incident is sufficiently described for purposes of a transfer hearing, we do not believe the identification of the crime committed should irrevocably bind the prosecutor's subsequent "proper action," when he seeks to alter the information to allege the manner in which the underlying violation was committed. See *People v. Fuzi*, 46 Mich. App. 204, 208, 208 N.W.2d 47, 50 (1973);

*People v. Morris*, 33 Mich.App. 654, 659, 190 N.W.2d 311, 313–14 (1971); *Turpin v. State*, 89 Nev. 518, 520, 515 P.2d 1271, 1272–73 (1973).

In this case the alleged violation was the rape of the named victim. Under § 698.1, The Code, 1975, this offense could be committed (1) by force or against the victim's will, or (2) by sexual intercourse with a female under the age of consent. The county attorney's information, which alleged a violation of the same statute, did not charge a new offense. Cf., *State v. Sheffey*, 234 N.W.2d 92, 95 (Iowa 1975) (permitting amendment of information to allege "receiving" instead of "concealing" stolen property).

Davis' claim and issue preclusion arguments are also without merit. A transfer hearing does not constitute a hearing on the substantive merits of the delinquency petition's allegations. See *Edwards v. State*, 249 N.W.2d 851, 853 (Iowa 1977); *State v. Anthony*, 239 N.W.2d at 851; *State v. Halverson*, 192 N.W.2d 765, 768–69 (Iowa 1972).

Generally, a transfer order following hearing is analogous to an order after preliminary hearing in which probable cause is found: It binds the juvenile to the jurisdiction of the district court for criminal prosecution. *Bergman v. Nelson*, 241 N.W.2d 14, 16 (Iowa 1976). A juvenile is not amenable to criminal prosecution until he or she is transferred by juvenile court. In *Interest of Johnson*, 257 N.W.2d at 48; *State v. Halverson*, 192 N.W.2d at 767–69. But all the juvenile court decides is whether such transfer is warranted. *State v. Halverson*, 192 N.W.2d at 769. Thus, the transfer order is not an adjudication on the merits of the rape allegations.

It follows that the doctrines of claim and issue preclusion have no applicability in this case. None of the requirements for invoking those doctrines is present. *Bd. of Suprs. Carroll Cty. v. Chi. & N. W. Transp. Co.*, 260 N.W.2d 813, 816 (Iowa 1977); see *Mauer v. Rohde*, 257 N.W.2d 489, 497 (Iowa 1977); Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L.Rev. 27 (1964).

The State was not barred from filing the statutory rape charge, alleging violation of § 698.1, The Code, 1975. District court had jurisdiction over the prosecution for the offense charged.

II. *Is § 782.4, The Code, constitutional?*

We quoted the pertinent portions of § 782.4 (rape shield law) in *State v. Ball*, 262 N.W.2d 278, 279 (Iowa 1978).

State made a pre-trial motion to restrict cross-examination of the victim regarding her prior sexual conduct. Defense counsel resisted, asserting § 782.4 violates the United States Constitution. He stated he would ignore its provisions in course of trial, "so that you can make appropriate ruling on the constitutionality of the statute." The prosecutor replied: "[I]n any event * * * cross examination of any witnesses is always limited to those matters which are relevant and material * * *." Trial court stated it would "have to make rulings as the questions are propounded since the defendant has not seen fit to have a hearing in camera regarding any previous sexual misconduct, if any." The court overruled the motion in limine and overruled defendant's pre-trial motion to declare § 782.4 unconstitutional.

Cross-examining the victim, defense counsel asked: "[W]ithin a year prior to this time have you had intercourse with anyone?" State objected on the ground "previously discussed," and relevance. A recess was declared, and the following additional record was made:

MR. MILLER [defense counsel]: That the next question I would have asked her after you sustained the other objection was whether or not she had had intercourse before October 22nd, 1976. And I would like to know if Mr. Blink would have made the same objection.

MR. BLINK [prosecutor]: Same objection, relevance, Your Honor, and materiality.

MR. MILLER: Would your ruling have been the same?

THE COURT: On the basis of that question.

MR. MILLER: Sustained?

THE COURT: Yes.

MR. MILLER: I think that is all the record I want to make. That was the additional question I would have asked her.

Thus, on the basis of these two questions on cross-examination of a fourteen-year-old victim in a statutory rape prosecution, we are requested to undertake an analysis of the constitutionality of our rape shield law.

■ Of course we realize the primary interest secured by the confrontation clause, U.S. Const. amend. VI, is the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. Carney*, 236 N.W.2d 44, 46 (Iowa 1975). This sixth amendment right "is made obligatory upon the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923, 926 (1965).

In *State v. Carney*, 236 N.W.2d at 46, we summarized other pertinent rules relating to cross-examination:

A reasonable latitude must be accorded a cross-examiner but the scope thereof as to any proper subject of inquiry rests generally in trial court's sound discretion.

Trial court's discretion in this respect is a legal discretion and should not be exercised so as to exclude matters vital and proper to the defense of one accused.

The scope of cross-examination of a State's witness should be extended liberally on behalf of a defendant charged with a grave offense. (citations omitted)

■ But the court has a duty to protect a witness from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate. See *Smith v. Illinois*, 390 U.S. 129, 133, 88 S.Ct. 748, 750, 19 L.Ed.2d 956, 959–60 (1968), quoting *Alford v. United States*, 282 U.S. 687, 692–94, 51 S.Ct. 218, 219–20, 75 L.Ed. 624, 627–29 (1931). And clearly, no party has a constitutional right to elicit by cross-examination facts which are irrelevant or immaterial to the issues in the case being tried.

■ We frequently have recognized the principle that courts have a duty to avoid constitutional questions concerning statutes when merits of a case may be fairly decided without facing such questions. *State v. Fuhrmann*, 261 N.W.2d 475, 477 n.1 (Iowa 1978); *Moorman Mfg. Co. v. Bair*, 254 N.W.2d 737, 749 (Iowa 1977), aff'd, —— U.S. ——, 98 S.Ct. 2340, 57 L.Ed.2d 197; see *Elkins v. Moreno*, 435 U.S. 647, 660–61, 98 S.Ct. 1338, 1346–47, 55 L.Ed.2d 614, 625 (1978); 16 Am.Jur.2d Constitutional Law § 113 (1964); 16 C.J.S. Constitutional Law § 94 (1956).

We conclude this rule applies here. We do not reach the constitutional issue because answers to these questions were properly sustained on the ground of relevancy.

■ In *State v. Ball*, 262 N.W.2d at 280, a forcible rape case, we held certain evidence of the victim's prior sexual experience was irrelevant and immaterial, stating: "We have never adopted the principle that a victim's consent to intercourse with one man implies her consent in the case of another, and we reject it now." Our exclusion of such evidence is in accord with the majority of American jurisdictions. See citations in *Ball*, 262 N.W.2d at 280; 1 Wigmore, Evidence § 200 at 684 (3d ed. 1940); Caulfield, The New Oregon Sexual Offenses Evidence Law: An Evaluation, 55 Ore.L.Rev. 493, 512–13 (1976); cf., Fed.R. Evid. 404(b); Uniform Rules of Evidence 404(b).

Of course, consent is not even an issue here. Thus, assuming this statutory rape victim had sexual intercourse on a prior occasion or occasions, *Ball* necessarily renders such evidence inadmissible on either the substantive issue of defendant's guilt or on the victim's credibility. See *State v. McDaniel*, 204 N.W.2d 627, 629 (Iowa 1973); *State v. Blackburn*, 110 N.W. 275, 277 (Iowa 1907); *State v. McDonough*, 104 Iowa 6, 8–9, 12, 73 N.W. 357, 357, 358 (1897).

■ It is significant defendant never contended below these questions were merely preliminary or foundational. Evidence of specific acts of prior intercourse

might be relevant and admissible, even after enactment of § 782.4, in certain exceptional circumstances. One is suggested by *State v. McDaniel*, where spermatozoa was discovered on prosecutrix's medical examination and defendant sought to explain its presence by cross-examining her, and later offering testimony to show prior intercourse with another on the day of the alleged rape. We held trial court erred in restricting this cross-examination and rejecting the offered testimony. 204 N.W.2d at 629–30.

There is also an obvious probative value to evidence which discloses previous intercourse with someone other than the defendant when such evidence can account for a physical fact in evidence at the trial, such as semen, a ruptured hymen, a pregnancy, or the prosecutrix's physical condition indicating intercourse. However, to be admissible under this theory, a specific instance of intercourse must have been so timed as to conceivably account for the physical evidence.
—Note, Indiana's Rape Shield Law: Conflict with Confrontation Clause? 9 Ind. L.Rev. 418, 425 (1976) (footnotes omitted).

See Minn.Stat.Ann. § 609.347 (West Cum. Supp.1977).

■ We have held offers of proof are unnecessary to preserve alleged error in limiting cross-examination of prosecution's witnesses. *State v. Cornell*, 266 N.W.2d 15, 21 (Iowa 1978); *State v. Droste*, 232 N.W.2d 483, 489–90 (Iowa 1975). But these cases hold only that counsel is not required to demonstrate in advance the answers sought will be beneficial to defendant's case. However, when defendant's questions ask for irrelevant information, no error lies in curtailing such cross-examination where, as here, defendant makes no attempt to show trial court that the questions serve as foundation for further questions in an area of relevant inquiry. See *United States v. Berzinski*, 529 F.2d 590, 594, (8th Cir. 1976); *State v. Menke*, 227 N.W.2d 184, 191 (Iowa 1975); *State v. Rit-*

*chison*, 223 N.W.2d 207, 212–13 (Iowa 1974); *State v. Carpenter*, 124 Iowa 5, 9, 98 N.W. 755, 777 (1904).

Without reaching the issue of constitutionality of § 782.4, we hold trial court was right in sustaining the objections to these two questions on relevancy grounds.

III. *Was testimony of the State's medical witness admissible?*

Trial court overruled defendant's objections to questions designed to elicit an examining doctor's opinion the victim had sexual relations, which opinion was based partially on laboratory tests conducted by others not under his supervision.

On the night of the rape, the victim was examined by the doctor at Iowa Lutheran Hospital. He conducted a pelvic examination and found her to be tender on movement of the uterus and cervix. He obtained specimens for gonorrhea and syphilis tests, a sperm and acid phosphatase test, and a pregnancy test. These specimens were turned over to a laboratory technician. The results were disclosed on hospital reports, State's exhibits two and three, which formed much of the foundation for the doctor's opinion the victim had recently engaged in sexual intercourse. The doctor testified that in his ordinary practice of medicine in the hospital he regularly relied upon reports from its laboratory.

Defendant objected to the doctor's testimony as being hearsay and without proper foundation. Exhibits two and three were objected to on foundational and chain-of-custody grounds. Uncontroverted evidence disclosed these records were kept in the ordinary and regular course of business of the hospital, made at or about the time of the events recorded. They were offered in connection with the examining doctor's testimony relating to his opinion.

In the circumstances disclosed by this record, we hold there was no reversible error in admitting the doctor's opinion and the related hospital records. The rationale articulated in *Birdsell v. United States*, 346 F.2d 775, 779–80 (5th Cir.), cert. denied, 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965), is applicable here:

> With the increased division of labor in modern medicine, the physician making a diagnosis must necessarily rely on many observations and tests performed by others and recorded by them; records sufficient for diagnosis in the hospital ought [to] be enough for opinion testimony in the courtroom.

This portion of the *Birdsell* opinion was quoted with approval in *State v. Salter*, 162 N.W.2d 427, 430 (Iowa 1968).

In *Miller v. McCoy Truck Lines*, 243 Iowa 483, 488, 52 N.W.2d 62, 65 (1952), a doctor was permitted to testify to a diagnosis based in part upon x-rays taken by unidentified persons. We held this was not reversible error, stating:

> [W]e think the sensible and correct approach to it is well expressed in *Sundquist v. Madison R. Co.*, 197 Wis. 83, 221 N.W. 392, 393. There the doctor treating the patient, in making his diagnosis, relied in part on the records of regular hospital examinations made by hospital technicians who were not called as witnesses. In permitting the testimony, the court said: "In order to say that a physician, who has actually used the result of those tests in a diagnosis and in the treatment of the plaintiff, may not testify what that diagnosis was, the court must deliberately shut its eyes to a source of information which is relied on by mankind generally in matters that involve the health and may involve the life of their families and of themselves—a source of information that is essential that the court should possess in order that it may do justice between these parties litigant.
>
> "In making a diagnosis for treatment, physicians must of necessity consider many things that do not appear in sworn proof on the trial of a lawsuit—things that mean much to the trained eye and touch of a skilled medical practitioner. This court has held it will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, *even if*

*the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true.*" (emphasis added in *Miller*)

See *Ver Steegh v. Flaugh*, 251 Iowa 1011, 1017–18, 103 N.W.2d 718, 722–23 (1960); McCormick, Law of Evidence § 15 & nn.2, 3 & 4 (2d ed. 1972); Annot., 55 A.L.R.3d 551 (1974); cf., Fed.R.Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.").

Defendant's reliance on *Lessenhop v. Norton*, 261 Iowa 44, 153 N.W.2d 107 (Iowa 1967), to support his foundation objections to the hospital's laboratory tests is misplaced. We have limited the *Lessenhop* standards to those cases, both civil and criminal, arising under Iowa Code chapter 321B circumstances. *Brooks v. Engel*, 207 N.W.2d 110, 114 (Iowa 1973).

Nor does this appeal involve the usual controversy relating to the chain of custody of physical, or "real," evidence. Even in those cases, we have held a trial judge's decision to admit evidence over a chain-of-custody objection will not be overturned unless it constitutes a clear abuse of discretion. *State v. Bakker*, 262 N.W.2d 538, 543 (Iowa 1978); *State v. Lunsford*, 204 N.W.2d 613, 616–17 (Iowa 1973). In the case before us, the specimens to be tested were delivered immediately to a laboratory technician who was present. Results of tests have been admitted into evidence even though the material tested has been lost or discarded. *State v. Rush*, 242 N.W.2d 313, 316–17 (Iowa 1976); *Ver Steegh v. Flaugh*, 251 Iowa at 1019, 103 N.W.2d at 723.

Where, as here, we hold no reversible error occurred in permitting an examining doctor to express an opinion based in part on hospital tests of specimens secured in his examination, we see no error in permitting the hospital test records to be introduced into evidence, ancillary to his testimony.

We find no grounds for reversal on these claims.

**IV.** *Was defendant's rebuttal evidence of "prior false accusations against others for the same offense" erroneously excluded?*

Defendant sought to submit rebuttal evidence concerning an alleged incident, not mentioned during the victim's cross-examination, in which the victim on a prior occasion had cried "rape." State's objections to this testimony and related offer of proof were sustained.

The proffered proof was testimony of a sixteen-year-old boy who had taken the victim to a school dance when he was in the eighth grade and she in the seventh. Following the dance a number of boys and girls were in the basement of the victim's house. This witness testified:

A. We was grabbing each other and hitting each other and poking each other, but not really wrestling.

Q. Were there lots of people doing that? A. Yes.

Q. Boys and girls? A. Yes.

Q. And did she scream or yell "Rape" at that time? A. Yes.

Q. Was that in your presence? A. Yes.

Q. Were you raping her at the time? A. No.

Q. Were you attempting to have sexual intercourse with her at the time? A. No.

Q. Did she have her clothes off at that time? A. No.

Q. Did you have yours off? A. No.

Defendant relies on *State v. Poston*, 199 Iowa 1073, 203 N.W. 257 (1925), a case in which this court held cross-examination of the prosecutrix had been impermissibly restricted. In the case before us no mention of the above incident was made in cross-examining the victim. It is doubtful the offered testimony could have been admissible as impeachment. See *State v. Johnson*, 219 N.W.2d 690, 695–96 (Iowa 1974).

On appeal defendant argues a prior false accusation of the same offense stands as independent evidence that the charge before the court may never have been committed, citing *People v. Hurelbut*, 166 Cal. App.2d 334, 333 P.2d 82 (1958). See 81 Am.Jur.2d Witnesses § 537 (1976). This rationale was not asserted below. When evidence apparently inadmissible is offered for a limited purpose, the party making the offer has the burden of making clear to the court his or her theory of admissibility. *State v. Arnold*, 225 N.W.2d 120, 122 (Iowa 1975); *Lemke v. Mueller*, 166 N.W.2d 860, 871 (Iowa 1969).

Further, a more basic reason for trial court's exclusion of this evidence is apparent. We think the disclosed circumstances surrounding the basement incident were so totally unlike the facts in this case the testimony properly was excluded as irrelevant. The prior remark of the victim obviously was made in jest. Trial court did not abuse its discretion in concluding the statement had no probative value.

Accordingly, the judgment below is affirmed.

AFFIRMED.

All Justices concur except ALLBEE and McGIVERIN, JJ., who take no part.